**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 10a0474n.06

**No. 09-5054**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Aug 05, 2010**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    **Plaintiff-Appellant,**

v.

GARY MOORE,

    **Defendant-Appellee.**

                                      /

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

**OPINION**

BEFORE:    KEITH, CLAY, and GRIFFIN, Circuit Judges.

    **CLAY, Circuit Judge.**   The government appeals the district court's grant of Defendant Gary Moore's motion to suppress crack cocaine that was found on his person following a traffic stop. Defendant has been charged with four drug-related charges, including conspiracy to distribute both cocaine base and cocaine in violation of 21 U.S.C. § 846 and two counts of distributing cocaine base in violation of 21 U.S.C. § 841(a)(1). The district court granted the motion to suppress because the officers at the scene had no reasonable fear for their safety and did not have probable cause to effectuate a search incident to arrest. For the following reasons, the district court's grant of the motion to suppress is **AFFIRMED**.

**BACKGROUND**

    Defendant was indicted in the Eastern District of Tennessee along with three co-conspirators for conspiracy to distribute and for distributing cocaine and cocaine base. Defendant moved to suppress the drugs seized from his person following a traffic stop. The

traffic stop occurred after a police officer received word that a vehicle fitting the description of the car carrying Defendant and driven by Melissa Moore contained crack cocaine. The officer received permission from the car's driver to search the car but failed to locate any drugs. He then decided to search Defendant's person, seemingly as a last resort after spending nearly forty-three minutes at the scene of the traffic stop searching the vehicle.

The magistrate judge conducted an evidentiary hearing in connection with Defendant's motion to suppress at which the government's only witness was Chattanooga Police Officer Robert Lewis. The magistrate judge denied the motion, and Defendant filed no objections. Subsequently, Defendant obtained new counsel, who filed a new motion to suppress the same drugs and a motion for reconsideration of the district court's order adopting the magistrate judge's Report and Recommendation. The magistrate judge granted the motion for reconsideration and consulted a video recording of the traffic stop in question that had not been submitted as an exhibit at the initial hearing. On September 29, 2008, the magistrate judge, after reviewing the video recording, again recommended denying the motion to suppress.

Defendant objected to the magistrate judge's Report and Recommendation, and prior to ruling on the suppression motion, the district court reviewed the video recording of the traffic stop where the challenged search occurred. The district court also reviewed the transcript from the suppression hearing, and found the following facts:

> On September 27, 2007, Officer Robert Lewis of the Chattanooga police department was contacted "previously" by Detective Hixon and told that they were conducting surveillance on a silver Malibu and observed a drug transaction. Detective Hixon asked that the vehicle be stopped as it was believed that it contained ten ounces of crack cocaine. Officer Lewis saw the vehicle and observed it as it failed to stop at two successive stop signs. Officer

Lewis activated his blue lights and stopped the vehicle. The driver was Melissa Moore and the defendant Gary Moore was the only passenger. Officer Lewis explained the reason for the stop to Ms. Moore and asked for her driver's license, registration, and proof of insurance. He asked her to stand at the side of the road away from the traffic. Ms. Moore was visibly crying.

After checking Ms. Moore's license, Officer Lewis asked her if she had any firearms, money or contraband in the car or on her person. Ms. Moore said she did not, and Officer Lewis asked if she would consent to a search of her vehicle. Ms. Moore agreed to the search. This exchange occurred about ten minutes after the stop.

Officer Lewis then approached the passenger, defendant Gary Moore, and asked him if he had a driver's license because Ms. Moore seemed too upset to drive. He also asked the defendant to get out of the vehicle. The defendant produced his license, and Officer Lewis told him to stand with Ms. Moore between the patrol car and Ms. Moore's vehicle, out of the way of traffic. Officer Lewis testified that he thought it was unusual that the defendant seemed "overly friendly" while Ms. Moore was crying. Officer Lewis asked the defendant only once to keep his hands out of his pockets and asked him if he had any firearms, money or contraband on his person. The defendant pulled a roll of money ($425.00) from his front pants pocket. The roll was secured with a rubber band. As Officer Lewis walked away toward Ms. Moore's vehicle, he told another officer standing with Ms. Moore that he had not "patted down" the defendant so the officer should keep an eye on him. This exchange took about two minutes.

For the next thirty-one minutes, the officers thoroughly searched the vehicle. During this time, the video shows the defendant and Ms. Moore standing in front of the patrol car. The court has reviewed the video several times and it does not appear that the defendant ever put his hands in his pockets or did anything suspicious. About twenty-seven minutes into the search, an officer (probably Officer Lewis) stated something to the effect: " I think I'm going to search him in a second – can't hurt.[1]" Then, about four minutes later, an officer (again, probably Officer Lewis) said: ". . . go ahead and check him real quick."

After searching the vehicle, the officers had not been able to find any controlled substances, firearms, or money, but the officers noticed that the

---

[1]The government states in its briefs before this Court that Lewis said he was going to search him "to be safe" rather than "in a second." After reviewing the recording, we agree with the district court that Lewis states "in a second."

carpeting was lifted up on the passenger side and that the lining of the back seat was held up with a safety pin. Officer Lewis approached the defendant and asked him once again if he had any of those items on his person. Again, the defendant said no. At that point, Officer Lewis told the defendant to place his hands on the hood of the patrol car and to spread his legs. The defendant began to comply with Officer Lewis's request, but then turned and tried to flee. After he was taken down only a few feet away, the crack cocaine was found in his pocket. He and Ms. Moore were arrested.

The government takes issue with two statements in this recitation of the facts. First, it argues that Officer Lewis asked Defendant not once, but twice, to keep his hands visible. The government also states that even though the district court found that Defendant did not put his hands in his pockets, Lewis testified that Defendant "continued to put his hands in his pockets" and "several times . . . stuck his hands back in his pockets." (Suppression Hr. Tr. 16, 21). Defendant admits that he stuck his hands in his pockets twice, but after reviewing the video recording of the traffic stop, we agree with the district court that Defendant did not have his hands in his pockets during the search of the vehicle.

Based on these facts, the district court granted the motion to suppress. The government filed a motion for reconsideration, which was denied. The government's timely appeal followed.

## DISCUSSION

"This court reviews a district court's decision on a motion to suppress under two standards. 'Findings of fact are upheld unless clearly erroneous, while conclusions of law are reviewed *de novo*.'" *United States v. Jenkins*, 396 F.3d 751, 757 (6th Cir. 2005) (quoting *United States v. Leaks*, 95 F.3d 409, 416 (6th Cir.1996)). "This court views the evidence in the light most likely to support the district court's decision." *United States v. McPhearson*, 469 F.3d 518, 523 (6th Cir. 2006) (internal quotation omitted). "A factual finding is clearly

erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Blair*, 524 F.3d 740, 747 (6th Cir. 2008) (internal quotation omitted). Whether probable cause exists to arrest and detain a suspect generally is a question of law that we review *de novo*. *See Moldowan v. City of Warren*, 578 F.3d 351, 396 (6th Cir. 2009).

As a preliminary matter, we acknowledge that traffic stops are often considered in the framework of *Terry v. Ohio*, 392 U.S. 1 (1968). "A concern for officer safety permits a variety of police responses in differing circumstances, including ordering a driver and passenger out of a car during a traffic stop, . . . and conducting pat-down searches upon reasonable suspicion that they may be *armed* and *dangerous*." *United States v. Campbell*, 549 F.3d 364, 372 (6th Cir. 2008) (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 822 (6th Cir. 2005)). However, an officer is only allowed to pat-down a person in performing a *Terry* stop if he can "point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Sibron v. New York*, 392 U.S. 40, 64 (1968) (holding search for drugs, not weapons, required probable cause, not merely a reasonable suspicion).

In this case, the district court rejected the officer's claim that he was searching for weapons because the officer's testimony that he suspected Defendant was armed and dangerous was inconsistent with the facts. The district court correctly found that "whatever reasonable concern for his safety Officer Lewis could articulate at the beginning of the stop dissipated during the nearly forty-three minutes he allowed the Defendant to sit in Ms. Moore's vehicle and stand along the roadside during the search of the vehicle." *United States*

*v. Moore*, No. 08-CR-16, 2008 WL 4981704, at *3 (E.D. Tenn. Nov. 19, 2008). The government does not contest this finding on appeal, and it was uncontested that there was no search or pat-down of Defendant during the forty-three minute interval the officers questioned Defendant and searched the car.

Because there was no *Terry* stop search, the search was valid only if the officer had probable cause to believe that Defendant had drugs at the time of the search. "For probable cause to exist, the facts and circumstances within the officers' knowledge must be sufficient to warrant a man of reasonable caution to believe that an offense had been, was being, or was about to be committed." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007). "Whether probable cause exists depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *United States v. Pearce*, 531 F.3d 374, 380-81 (6th Cir. 2008) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).

## A.      Lack of Probable Cause for Search

Drugs were eventually found on Defendant following a search performed at the conclusion of a forty-minute traffic stop. According to the video, at 10:52 p.m., the officer approached Defendant and initiated an interaction that eventually led to the discovery of the drugs in Defendant's possession less than a minute later. When the officer initially approached Defendant at 10:52 p.m., he simply did not have probable cause to effectuate a search. Without citation to any case law involving similar facts, the government argues that the undisputed facts "considered in their totality, provide probable cause to believe that defendant was committing a criminal offense, specifically possessing drugs." (Appellant's Br.

at 17). We disagree. Before Defendant's futile attempt to flee from the officer, the government undoubtedly did not have probable cause to effectuate a search.

Supreme Court case law is clear that the standard for searching a car is very different than that of searching a passenger of a car. In allowing police officers to search a passenger's belongings, the Court distinguished between the search of a vehicle and a personal search because of "the unique, significantly heightened protection afforded against searches of one's person." *Wyoming v. Houhgton*, 526 U.S. 295, 301 (1999). This holding is based on a long-standing rule that probable cause to search a car does not mean that "a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled." *United States v. Di Re*, 332 U.S. 581, 587 (1948).

In this case, no evidence in the record even suggests that Defendant was involved in the drug transaction that may have triggered Officer Lewis' response. Officer Lewis' testimony at the suppression hearing indicates that he had no specific suspicion of Defendant. He stopped the car because it ran two stop signs, but his full testimony on the car's link to drug activity stated:

> I had been contacted just previously, I think, by Detective Hixon, who also works for us. He stated that they had just, or I learned that they were doing surveillance on a vehicle that they'd just done a drug transaction with and that they were surveilling the vehicle and they wanted the vehicle stopped. It was my understanding that there was around 10 ounces of crack cocaine hidden inside the vehicle.

(Suppression Hr. Tr. at 22). No evidence provided to Officer Lewis tied Defendant directly to the drugs, and even if it were assumed that drugs were in the car, they were no more likely to be possessed by Defendant than Ms. Moore. This one tip from another officer without a clear temporal description and without constant surveillance of the subject vehicle may not

have even been sufficient to provide probable cause to search the car. The search of the car was permissible because Ms. Moore consented to the search, but the government never received consent to search Defendant's person and did not attempt to conduct a timely *Terry* search following the traffic stop; it certainly did not have the probable cause necessary to overcome "the unique, significantly heightened protection afforded against searches of one's person." *Houghton*, 526 U.S. at 301. The government acknowledges the holding in *Di Re* but argues that when no drugs were found in the car, the likelihood that drugs would be found on Defendant was increased. For support, the government relies on a Tenth Circuit case, *United States v. Anchondo*, 156 F.3d 1043 (10th Cir. 1998). In that case, a search of the person was allowed following an unsuccessful search of the car. The crucial difference, however, is that the search of the car was triggered by a drug detection dog. The Tenth Circuit considers a canine alert probable cause for search and seizures. Once the dog had highlighted the presence of drugs, the lack of drugs in the car, "increased the chances that whatever the dog had alerted to was on the defendants' bodies." *Id*. at 1045. In the instant case, no drug dog was present, and the testimony does not suggest that Defendant had been under constant surveillance after another officer viewed a similar car participating in a drug transaction. Therefore, the officer could not be certain that he had stopped the car observed during the drug transaction or that drugs were even in the car.

Furthermore, Officer Lewis' testimony regarding his on-the-scene observations is insufficient to provide probable cause that Defendant possessed drugs. Officer Lewis testified that Defendant and Ms. Moore asked directions to a mall that was closed, that Ms. Moore was crying but Defendant was "overly-friendly," that Defendant had $425 in a rubber band, and

that Defendant put his hands in his pockets. Such relatively benign behavior and the tip from another officer that failed to provide any information about Defendant himself certainly did not provide the probable cause for an arrest.

In addition, the government argues that the district court made several "clearly erroneous" factual determinations, but these alleged errors were either immaterial or technically not errors. Specifically, the government finds clearly erroneous (a) the determination that Lewis only asked Defendant once to take his hands out of his pockets; and (b) the finding that Defendant did not put his hands in his pockets. Even if the government were correct that the district court erred in these two instances, any alleged error is irrelevant to the probable cause determination. In fact, Lewis told Defendant twice, not once, to take his hands out of his pockets. The two admonitions from Lewis occurred about a minute apart and fully thirty-two minutes before the actual search. That minor error had no impact on the district court's probable cause analysis.

The district court's contention that Defendant did not put his hands in his pocket was not clearly erroneous because the district court was referring to what occurred during the search of the vehicle. Defendant had put his hands in his pockets before the search of the vehicle began. Even if the district court's determination were incorrect, the fact Defendant put his hands in his pockets twice does not contribute to a probable cause determination that he had drugs. The number of times Defendant reached into his pockets would perhaps be relevant had the government continued to press its argument that the search was permissible because the officer had a reasonable fear for his safety. When pulled over by the police, Defendant had ample opportunity to put drugs into his pockets before the police officer got to the car, and

subsequently putting his hands into his pockets on two occasions does not in any way increase the likelihood that he illegally possessed drugs. The government offers no persuasive reason why the Defendant putting his hands in his pockets would increase the likelihood that he had drugs on his person. These two alleged factual errors should have had no cognizable effect on the probable cause analysis.

**B.      Propriety of Search in the Absence of Probable Cause**

The government contends that, even if these facts did not support a finding of probable cause when Officer Lewis approached Defendant to conduct a search of Defendant's person, Defendant's attempt to run away provided the necessary probable cause to allow for a search. "Headlong flight – wherever it occurs – is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Arguably, the attempt to flee plus the other indications that Defendant could have had drugs might create the necessary probable cause to allow for an arrest and search incident to arrest. The district court did not reach this issue because it reasoned that the search had already commenced before Defendant attempted to flee. The district court found that "defendant's attempted flight occurred after the officer tried to search him" and further held that evidence "obtained after the officers began to search cannot be used later to justify the search." (Order on Mot. for Reconsideration at 2). Since "the fruits" of a search incident to arrest cannot be used to sustain probable cause, *United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004), the question of whether the search had begun before Defendant tried to run therefore becomes the crucial question to be resolved.

The government argues that the district court made an erroneous factual finding by holding that Defendant's attempt to flee occurred after the search had commenced. It argues that: "Because defendant's flight preceded any frisk or search, the district court erred by not considering it as a factor contributing to probable cause to arrest and search defendant." (Appellant's Br. at 20). If the determination were purely a factual determination, the district court's judgment would easily be upheld as not clearly erroneous. The government, however, has actually misstated the standard of review in Defendant's favor. "In reviewing a decision on a suppression issue, we review the lower court's findings of fact for clear error and its conclusions of law *de novo*." *United States v. Salgado*, 250 F.3d 438, 455 (6th Cir. 2001). We accept the district court's factual determinations unless they are clearly erroneous and then make a *de novo* determination of whether those facts mean that a search had occurred. *Id.* (accepting the district court's factual findings as not clearly erroneous but reviewing *de novo* the legal determination that the insertion of a key into a lock was not the beginning of a search).

Even under the *de novo* standard, the district court was correct that the search began before Defendant attempted to run away. While the officer had yet to physically reach into Defendant's pockets, he had physically placed Defendant next to a car and told him to spread his legs. He also had placed his hand on Defendant's side. He motioned for another officer to assist, and Defendant then attempted to run away, never escaping the officer and quickly being corralled by a number of officers. We agree with the district court that, as a matter of law, the search began when the officer physically positioned Defendant on the hood of a police car by grabbing his shirt, instructed him to spread his legs, and then physically touched him

on his side, presumably in an attempt to uncover contraband or a weapon. Officer Lewis'

intent to search was apparent, and the physical contact clearly indicates that the search had

begun. "Before [an officer] places a hand on the person of a citizen in search of anything, he

must have constitutionally adequate, reasonable grounds for doing so." *Sibron v. New York*,

392 U.S. 40, 64 (1968).[2] In this case, Officer Lewis lacked the requisite probable cause to

begin the search when he placed a hand on Defendant. While the drugs were only recovered

after Defendant attempted to flee, the search that led to the discovery of the drugs began before

the officers had probable cause, and the evidence was therefore properly suppressed. *See id*.

at 63 (holding that it is "axiomatic that an incident search may not precede an arrest and serve

as part of its justification"). The dissent's repeated fixation on the use of the term "attempted

search" obscures the fact that the district court clearly held that the search began before

Defendant attempted to flee. "The court finds that the defendant's attempted flight occurred

*after* the officer tried to search him. Evidence obtained after the officers began to search

cannot be used to later justify the search." *United States v. Moore*, No. 08-CR-16, 2009 WL

---

[2]The dissent cites language from a number of irrelevant cases to create the illusion that the officer's conduct could not constitute a search. First the dissent cites a series of cases that all deal with searches of objects rather than searches of persons. (Dissent at 9). Then, the dissent cites a string of cases stemming from the Supreme Court's decision in *United States v. Dionisio*, 410 U.S. 1 (1973). (Dissent at 10-11). The Supreme Court in *Dionisio* found that the Fourth Amendment provided no protection for "what a person knowingly exposes to the public . . . The physical characteristics of a person's voice, its tone and manner, as oppose to the content of a specific conversation are constantly exposed to the public. Like a man's facial characteristics, or handwriting, his voice is repeatedly produced for others to hear." 410 U.S. at 14 (citation and quotation omitted). In these cases, the only evidence being sought consists of observable physical characteristics, not, by way of example, what a citizen might be intentionally concealing inside his clothing. None of these cases have any relevance to an officer's conduct in searching for drugs in a roadside stop.

73148, at *1 (E.D. Tenn. Jan. 6, 2009).  The use of the term "attempt" elsewhere in the opinion only implies that the search was not completed, not that it was not begun.

We acknowledge that Defendant's attempt to flee after the search began may have implications for the probable cause analysis, but those implications were never properly raised by the government before this Court.  While the government referenced Defendant's flight as a factor in the probable cause analysis, it failed to properly make any argument that Defendant's attempt to break free from the officer's grip could turn an unconstitutional search into a constitutional search.[3]  Defendant's attempt to resist the search raises a host of complicated issues including whether Defendant's lack of cooperation with the search constituted a crime, whether Defendant should have been allowed to depart the scene prior to the illegal search, and what a person's obligations are to submit to unconstitutional searches. These arguments have not been properly raised or briefed before this Court, and we decline to consider them.

The dissent misapprehends our position in declining to reach this issue.  We decline to reach the issue because the government, while referencing Defendant's flight, never discussed whether an unlawful search could turn lawful if Defendant attempted to flee.  The government's failure to raise the issue is apparent based on the dissent's own analysis of the issue. The dissent finds for the government on the issue by relying on five separate cases.  Not one of those cases appears in the government's brief to this court.  The government, as

---

[3]The district court also declined to consider this argument because it was not made until the government's motion for reconsideration of the district court's grant of Defendant's motion to suppress.  In that motion, the government raised for the first time T.C.A. § 39-16-602, which makes it an offense to stop a law enforcement officer from searching a person.  That statute was never referenced before the magistrate judge or before this Court.

appellant in this case, could have located the cases found by the dissent and therefore allowed

Defendant, as appellee, an opportunity to respond. The dissent argues that "we have not

addressed this precise issue in a published decision," but appears to believe that such standard

operating procedure as considering reasoned arguments by both parties is unnecessary to

answering unresolved questions. Actually, the dissent seems to prefer to derive its legal

position from opinions from the Eighth Circuit and several unpublished opinions in this

Circuit.[4] Contrary to the dissent's approach, we decline to decide a legal issue never briefed

or argued before this Court.[5]

To summarize, our holding is two-fold. First, Officer Lewis did not have probable

cause to search Defendant's person based on the tip that a similarly described car might be

transporting drugs and based on Defendant's behavior before and during the search of the car.

Additionally, we hold that the search of Defendant began in the absence of probable cause

before he attempted to flee. Consequently, the officer did not have probable cause to search

Defendant at the time that the actual search began.

## CONCLUSION

For the foregoing reasons, the district court's grant of Defendant's motion to suppress

is **AFFIRMED**.

---

[4]In one of those unpublished opinions, *United States v. Baldwin*, 114 F. App'x 675, 687 (6th Cir. 2004), the dissent relies on language from that case's dissent and is forced to distinguish the majority opinion. The need to distinguish *Baldwin* underscores the complexity of the issue and bolsters our decision to decline to rule on this issue without proper briefing and argument.

[5]The dissent appears to understand this concept when it declines to consider whether Defendant was improperly seized because Defendant "makes no argument that he was unlawfully seized." (Dissent at 12).

GRIFFIN, Circuit Judge, dissenting.

I respectfully dissent. In my view, the undisputed evidence demonstrates that defendant Moore was not searched until *after* he fled from Officer Lewis, thereby providing probable cause for his subsequent arrest and search, which led to the recovery of crack cocaine from his pocket. Alternatively, assuming arguendo that an unlawful search or seizure occurred, I would hold that Moore's conduct in resisting and fleeing from Officer Lewis constituted an independent, intervening act which rendered his subsequent arrest and search incident to that arrest lawful. For these reasons, I would reverse the district court's suppression of the crack cocaine found in Moore's pocket.

## I.

As a preliminary matter, I note that Moore did not object to below, and he does not challenge in this appeal, the magistrate judge's ruling that the initial stop of the vehicle in which he was a passenger was constitutional. Officer Lewis, who stopped the car, had been notified by another detective that "they'd just done a drug transaction with" a particular silver Malibu and "wanted the vehicle stopped." "It was [Officer Lewis's] understanding that there [were] around 10 ounces of crack cocaine hidden inside the vehicle." Officer Lewis stopped the Malibu after it failed to obey two stop signs. *See United States v. Canipe*, 569 F.3d 597, 601 (6th Cir. 2009) (holding that an officer does not violate the Fourth Amendment when he stops a vehicle for a traffic violation, even though the officer's subjective purpose for making the stop was his suspicion that another crime had been committed) (citing *Whren v. United States*, 517 U.S. 806, 813-19 (1996)).

II.

Moore also does not argue that the search of his car was unlawful. After Officer Lewis explained the reason for the stop – failure to obey two stop signs – Moore stated that he and his wife were lost and asked Officer Lewis to write down directions to a local mall. According to Officer Lewis, "it was obvious that [Mrs. Moore] was crying[,]" shaking, and appeared to be more nervous than the "average motorist." In addition, "there was a strong odor of air freshener" emanating from the car. When asked by Officer Lewis why she came to Chattanooga, Mrs. Moore responded that she was visiting a friend and shopping at the mall. In Officer Lewis's view, Mrs. Moore's explanation was "odd" because she stated she had finished work at 5:00 p.m., had driven three hours for the trip and was heading home (a "far [distance] [for] such a short turnaround"), was driving toward the mall rather than away from it, and the mall was closed at that hour. In light of this suspicious information, Officer Lewis requested, and obtained, Mrs. Moore's consent to search her vehicle. The district court held correctly that "the officers could thoroughly search the vehicle and its contents" based upon Mrs. Moore's lawful consent. *See United States v. Erwin*, 155 F.3d 818, 823 (6th Cir. 1998) (en banc) (holding that "[a] law enforcement officer does not violate the Fourth Amendment" when he "request[s] for consent to search the individual's vehicle").

Immediately prior to the search of the car, Moore denied having contraband and pulled a cash roll of approximately $400 from his front pants pocket, which was wrapped in a rubber band. According to Officer Lewis, "[A] lot of time drug couriers wrap their money in rubber bands." During his search of the vehicle, Officer Lewis observed that the carpet was "pulled

back" on the floor of the passenger side and that the lining of a back seat cushion had also been displaced and re-secured with a safety pin as if they were hiding spots.

## III.

The events most critical to this appeal occurred when officers failed to find contraband in Moore's vehicle following their search of it. At that point, Officer Lewis approached defendant Moore and his wife and asked whether they had anything illegal on themselves. According to Officer Lewis, defendant Moore initially "wouldn't look at me and I don't think he even made a statement[,]" but he then said no and appeared "a little bit fidgety[.]" Moore's reaction made Officer Lewis "suspicious." After assuring Moore that he would be on his way in "just a second[,]" Officer Lewis told Moore to place his hands on the hood of the patrol car. When Moore turned around to do so, Officer Lewis, now standing behind him, placed one hand on defendant's left shoulder, briefly touched his left side, motioned for another officer to approach, and instructed Moore to spread his legs. Officer Lewis testified that he "was about to ask [Moore] for consent" to search him.

Defendant is mistaken when he asserts that the district court rejected Officer Lewis's testimony that he was "about to ask" for permission to search defendant. In fact, the district court made no such finding. The evidentiary hearing on Moore's motion to suppress was held before a magistrate judge, who found that Officer Lewis, the only witness to testify about the alleged search, was "an extremely creditable and forthcoming witness. He is believed, and nothing else in this regard need be said . . . ." Moore filed no objections to the magistrate judge's finding that Officer Lewis was credible, and the district court did not address, let alone "reject," any of Officer Lewis's testimony.

Although Moore complied initially with Officer Lewis's instructions, he then turned and fled. The entire incident, from the time Officer Lewis told Moore to place his hands on the hood of the police car to when Moore fled, lasted less than ten seconds. He was tackled a few feet away by three officers and handcuffed following a brief struggle. Approximately two ounces of crack cocaine were found in Moore's pocket.

IV.

According to my colleagues, "the question of whether the search had begun before [Moore] tried to run . . . becomes the crucial question to be resolved." Maj. Op. at 10. The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures[.]" U.S. Const. amend. IV. Because the district court and my colleagues do not hold, and Moore does not argue in this appeal, that he was unreasonably *seized* following the lawful search of his vehicle, only the "unreasonable search[]" prohibition of the Fourth Amendment arguably applies. *Cf. Sibron v. New York*, 392 U.S. 40, 63 (1968) ("We are not called upon to decide in this case whether there was a 'seizure' of Sibron inside the restaurant antecedent to the physical seizure which accompanied the search.").

However, the law is well-established that police conduct which does not amount to a "search" does not violate the Fourth Amendment's protection from unreasonable searches. *See United States v. Long*, 464 F.3d 569, 573 n.1 (6th Cir. 2006) (stating that there is "no cognizable Fourth Amendment" claim when there is no search or seizure). As the majority correctly acknowledges, we give no deference to the district court's legal determination that a search occurred; rather, we give the issue our fresh review. *United States v. Salgado*, 250 F.3d 438, 455 (6th Cir. 2001) (accepting the district court's factual findings as not clearly

erroneous but reviewing de novo and affirming the district court's ruling that the insertion of a key into a lock was not a search under the Fourth Amendment).

A.

The majority interprets the district court's holding as follows: "[Moore's] attempt to flee occurred after the search had commenced." Maj. Op. at 10. However, my colleagues misread the district court's holding. In at least six places, the district court characterizes Officer Lewis's conduct with respect to Moore not as a search, but as an "*attempted* search" or an "*attempt* to search" only. (Emphasis added.)[1] In its order on the government's motion for reconsideration, the district court held similarly that "the defendant's attempted flight occurred after the officer *tried to* search him." (First emphasis omitted; second emphasis added.) Consistent with this interpretation of the district court's holding, Moore states in his appellate brief that "[t]he District Court reasoned that this *attempted* search was unreasonable . . . ." (emphasis added), and "[t]he District Court rightly concluded that the officer's *attempt* to search the Defendant was a search for drugs and not weapons. Both the conduct of the officers during the search and the fact that they waited until they completed the vehicle search to *attempt* to search the Defendant supports this conclusion." (Emphasis added.) In fact,

_____

[1]The district court stated: "For the reasons discussed below, the defendant's objection to the finding related to the *attempted* search of his person will be granted and the evidence seized from his person will be suppressed" (emphasis added); "[t]he defendant's second objection concerns the *attempted* search of the defendant's person" (emphasis added); "[t]he court finds that Officer Lewis's *attempt* to search the defendant's person was not related to any concern for 'officer safety' and the search cannot be justified as a patdown for weapons" (emphasis added); "[t]he court has thoroughly reviewed the video and the events leading up to the *attempted* search . . . ." (emphasis added); "[t]he crack cocaine that was found on the defendant was a direct result of the unlawful *attempt* to search the defendant" (emphasis added); "[t]herefore, the court finds the defendant's objection to the report and recommendation concerning the *attempted* search of his person well taken."

Moore virtually concedes that he was not searched when he emphasizes in the last paragraph of his argument section that "there is no question the officer *was going to* search him" and "Officer Lewis was *going to search* the Defendant for narcotics . . . ." (Emphasis added.)

The law has long distinguished between conduct constituting a mere intent to violate the law, an attempt to do so, and the actual commission of an offense. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007). Regarding the Fourth Amendment, the proper characterization of Officer Lewis's conduct is not only "crucial" as the majority characterizes it, but *dispositive* as to whether a constitutional violation occurred because, unlike statutes which proscribe both attempts and completed offenses, the text of the Fourth Amendment does not.

B.

The majority fails to support its holding that a search occurred at the hood of the police car. In affirming the district court's ruling that a Fourth Amendment violation occurred, the majority reasons:

> While the officer had yet to physically reach into [Moore's] pockets, he had physically placed [Moore] next to a car and told him to spread his legs. He also had placed his hand on [Moore's] side. He motioned for another officer to assist, and [Moore] then attempted to run away, never escaping the officer and quickly being corralled by a number of officers. We agree with the district court that, as a matter of law, the search began when the officer physically positioned [Moore] on the hood of a police car by grabbing his shirt, instructed him to spread his legs, and then physically touched him on his side, presumably in an attempt to uncover contraband or a weapon. Officer Lewis' intent to search was apparent, and the physical contact clearly indicates that the search had begun. . . . In this case, Officer Lewis lacked the requisite probable cause to begin the search when he placed a hand on [Moore]. While the drugs were only recovered after [Moore] attempted to flee, the search that led to the discovery of the drugs began before the officers had probable cause, and the evidence was therefore properly suppressed.

Maj. Op. at 11-12 (internal citation omitted).

In addition to the majority's mistaken reliance upon Officer Lewis's purported "intent" as evidence that a search occurred, *see Bond v. United States*, 529 U.S. 334, 338 n.2 (2000) ("[T]he issue [in determining whether an officer's actions violate the Fourth Amendment] is not his state of mind, but the objective effect of his actions"); *cf. Resendiz-Ponce*, 549 U.S. at 107 (stating that "mere intent" to violate the law is not an offense), my colleagues also speculate that Officer Lewis "physically touched [Moore] on his side, presumably in an attempt to uncover contraband or a weapon." Maj. Op. at 11. However, neither the magistrate judge nor the district court found that the very brief, fraction-of-a-second touching was "an attempt to uncover contraband or a weapon."

In his R&R, the magistrate judge found that Officer Lewis "placed one of defendant's hands on top of the car, while placing his own hand on defendant's shoulder. At that point, defendant bolted and ran." Similarly, the district court found that "Officer Lewis told the defendant to place his hands on the hood of the patrol car and spread his legs. The defendant began to comply with Officer Lewis's request, but then turned and tried to flee." Significantly, Officer Lewis did not pat down Moore; rather, after positioning Moore on the police cruiser, Officer Lewis motioned for another officer to approach. Immediately thereafter and before the other officer responded, Moore fled.

The majority disposes of its "crucial" question – whether Officer Lewis's conduct amounted to a search – by quoting a single sentence from an inapposite Supreme Court decision, *Sibron v. New York*. In *Sibron*, a companion case to *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held, in relevant part, that a police officer's search of a defendant

and seizure of heroin from him were unlawful because they were not supported by probable cause or a reasonable fear for officer safety. 392 U.S. at 62-64. However, *Sibron* did not address the threshold issue posed in the present case – whether police conduct constituted a search. In fact, there was no dispute in *Sibron* that a search occurred when the officer "thrust his hand into [the defendant's] pocket, discovering several glassine envelopes, which, it turned out, contained heroin." *Id*. at 45. The *Sibron* Court's statement that, "[b]efore [an officer] places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so[,]" 392 U.S. at 64, is not a holding that a search occurs whenever an officer "places a hand" on someone, as the majority erroneously implies. Instead, the Supreme Court was merely expounding upon its general admonition in the sentence immediately preceding the quoted one that "[t]he police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries." *Id*. at 64.

C.

There was no search of Moore at the hood of the cruiser. "The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy." *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (citations and internal quotation marks omitted). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967). Moreover, "[u]nder either the King's or the Colonists' English, the term 'search' implies something more than a superficial, external examination. It entails 'looking through,' 'rummaging,' 'probing,' 'scrutiny,' and 'examining internally.'"

*Canipe*, 569 F.3d at 605 (quoting *United States v. Snow*, 44 F.3d 133, 135 (2d Cir. 1995)); *see also Kyllo v. United States*, 533 U.S. 27, 32 n.1 (2001) ("When the Fourth Amendment was adopted, as now, to 'search' meant 'to look over or through for the purpose of finding something; to explore; to examine by inspection; as, to *search* the house for a book; to *search* the wood for a thief.'") (citation omitted); *Arizona v. Hicks*, 480 U.S. 321, 328 (1987) ("[A] truly cursory inspection – one that involves merely looking at what is already exposed to view, without disturbing it – is not a 'search' for Fourth Amendment purposes, and therefore does not even require reasonable suspicion."). In the present case, the majority cites no relevant authority that Officer Lewis's superficial touching of Moore's shoulder and side infringed upon Moore's reasonable privacy expectations or amounted to the type of intrusion that we recognize as a search under the Fourth Amendment.

In this regard, Officer Lewis did not search Moore's body for either evidence or weapons before his flight. Moreover, Officer Lewis's touch of Moore's shoulder and fleeting contact to his side were less intrusive than the "*careful exploration* of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons" that the Supreme Court qualified as a "*limited* search" in *Terry v. Ohio*, 392 U.S. at 16, 24 (emphasis added). In fact, Officer Lewis's non-invasive conduct falls short of even that which has been held to be beyond the purview of a Fourth Amendment search. *See United States v. Richardson*, 388 F.2d 842, 845 (6th Cir. 1968) (holding that an "examination of appellant's hands under the ultraviolet light [w]as [not] a search within the meaning of the Fourth Amendment"); *United States v. Ferri*, 778 F.2d 985, 995 (3d Cir. 1985) (holding that "the grand jury's directive that [the defendant] submit his feet and shoes for ink printing did not constitute a 'search' of his

person"); *Stehney v. Perry*, 907 F. Supp. 806, 823 (D. N.J. 1995) ("[T]he taking of a fingerprint is not a search even though it involves touching and pressing, and reveals physiological traits too minute to be considered exposed to public view in any meaningful sense.") (citing *United States v. Dionisio*, 410 U.S. 1, 15 (1973)); *State v. Chesney*, 353 A.2d 783, 788 (Conn. 1974) (holding that "applying paraffin casts to the accused's hands [to test for gunpowder reside] did not violate the fourth . . . amendment[] any more than fingerprinting"), overruled on other grounds, *State v. Stange*, 563 A.2d 681 (Conn. 1989); *United States v. Holland*, 378 F. Supp. 144, 155 (E.D. Pa. 1974) (holding that a dental examination to see if a tooth is missing is not a search, even though it involves an intrusion into a body cavity); *Perry*, 907 F. Supp. at 823 (holding that a polygraph test does not constitute a search because "[t]he incidental contact involved in attaching polygraph equipment and the rather innocuous readings of heart rate, respiration and perspiration changes are hardly more intrusive than a dental examination"); *Dionisio*, 410 U.S. at 14-15 (1973) (stating that "[t]he physical characteristics of a person's voice, its tone and manner, as opposed to the content of a specific conversation, are constantly exposed to the public[,]" and "[l]ike a man's facial characteristics, or handwriting, his voice is repeatedly produced for others to hear" so that "[n]o person can have a reasonable expectation that others will not know the sound of his voice, any more than he can reasonably expect that his face will be a mystery to the world"); *United States v. Mara*, 410 U.S. 19, 21 (1973) ("Handwriting, like speech, is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person's script than there is in the tone of his voice.").

Although each of these cases involved touching and/or actual scrutiny of a suspect –

a stark contrast to the facts here – the examinations at issue nevertheless failed to qualify as

Fourth Amendment searches because the suspect had no reasonable privacy expectation in the

object examined, and/or the intrusion, if any, was minimal or de minimis. Such is the case

here. Officer Lewis's conduct is clearly distinguishable from other police touchings that have

been held to constitute searches. *See, e.g., United States v. Askew*, 529 F.3d 1119, 1127 (D.C.

Cir. 2008) (en banc) (holding that a partial unzipping of the defendant's jacket to facilitate a

show-up identification procedure during a *Terry* stop constituted a search); *Minnesota v.

Dickerson*, 508 U.S. 366, 378 (1993) (holding that "'squeezing, sliding and otherwise

manipulating the contents of the defendant's pocket' – a pocket which the officer already knew

contained no weapon . . . overstepped the bounds of the 'strictly circumscribed' search for

weapons allowed under *Terry*") (internal citations omitted); *see also Smith v. Maryland*, 442

U.S. 735, 740 (1979) (holding that the individual's expectation of privacy triggering Fourth

Amendment protections must be "one that society is prepared to recognize as reasonable")

(internal citation and quotation marks omitted); *cf. Bond*, 529 U.S. at 338-39 (stating that a bus

passenger who places his bag in an overhead bin "expects that other passengers or bus

employees may move it" or "handle[]" it "for one reason or another" without violating his

privacy expectations, so long as other passengers or bus employees do not, "as a matter of

course, feel the bag *in an exploratory manner.*") (emphasis added). Because the majority's

interpretation would contravene the plain meaning of a "search" under the Fourth Amendment

and the judicial mandate that the search must infringe upon a legitimate privacy interest, I

would hold, consistent with Moore's own admission that "Officer Lewis was *going to search*" him (emphasis added), that a search did not occur.

V.

Because Moore was not searched at the hood of the cruiser (and makes no argument that he was unlawfully seized), his flight, coupled with the panoply of other evidence causing at least reasonable suspicion to believe he possessed drugs, turned reasonable suspicion into probable cause to arrest him. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Headlong flight . . . is the consummate act of evasion" and suggestive of guilt); *see also United States v. Schaafsma*, 318 F.3d 718, 722 (7th Cir. 2003) ("[I]t is generally accepted that flight can be strong evidence of guilt.") (citation and internal quotation marks omitted); *United States v. Dotson*, 49 F.3d 227, 231 (6th Cir. 1995) (collecting cases and holding that the defendant's "efforts to flee, coupled with [a detective's] reasonable suspicion that [he] was involved in criminal activities, established probable cause to arrest" him); *cf.* Sixth Cir. Crim. Pattern Jury Instr. § 7.14 (2009) (permitting a jury to consider a defendant's flight following his alleged commission of a crime as evidence of guilt). Thereafter, the officers' search of Moore and seizure of the crack cocaine from his pocket were lawful as a search incident to his valid arrest. *United States v. Robinson*, 414 U.S. 218, 235 (1973) (holding that after "a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment").

VI.

Finally, assuming arguendo that an unlawful search or seizure occurred at the hood of the police car, I would also hold that Moore's conduct in resisting and fleeing from Officer

Lewis rendered his subsequent arrest and search lawful. Although we have not addressed this precise issue in a published decision, numerous courts have held consistently that resistance to an unlawful search or seizure constitutes an independent, intervening act that sufficiently attenuates any connection between the unlawful search and seizure and provides legitimate grounds for a second seizure and search. *See United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995) (relying upon cases from the Fifth, Ninth, Tenth, and Eleventh Circuits and stating, "assuming *arguendo* that [the officer's] initial stop and arrest of [the defendant] were invalid, [the defendant's] resistance provided independent grounds for his arrest, and the evidence discovered in the subsequent searches of his person and his automobile is admissible"); *see also United States v. Baldwin*, 114 F. App'x 675, 687 (6th Cir. 2004) (unpublished) (Sutton, J., dissenting) ("The exclusionary rule protects those who follow police direction after an illegal stop, not those who seek to escape out of a sense of panic or on their own suspicion that a police search is unsupported.");[2] *United States v. Castillo*, No. 99-5463, 2000 WL 1800481, at *17-*18 (6th Cir. Nov. 28, 2000) (unpublished) (holding that the defendant's "high-speed flight from [law enforcement] constituted an intervening act that purged the taint of his" allegedly unlawful detention because "[i]t is widely recognized that if a suspect's response to an illegal stop is itself a new, distinct crime, then the police constitutionally may arrest the

---

[2]In *Baldwin*, the majority rejected the government's argument that the defendant's resistance and flight following an illegal detention and pat down search established an "independent source[] for the admission of [] evidence[.]" 114 F. App'x at 682. However, it did so because "the subsequent detention following [the defendant's] resistance failed to reveal any evidence that was not *already known* to [the officer.] . . . [T]he subsequent searches . . . uncovered no new or additional evidence." *Id*. These facts, which the *Baldwin* majority characterized as "critical" and distinguishable from those in *Dawdy*, 114 F. App'x at 682, are absent from the present case. Here, Officer Lewis did not discover the crack cocaine prior to Moore's flight; rather, the contraband was found after Moore fled and therefore constituted "new or additional evidence." *Id*.

[suspect] for that crime . . . even if the new crime is in response to police misconduct and causally connected thereto") (internal citations and quotation marks omitted);[3] *United States v. Jefferson*, No. 98-5273, 1999 WL 519298, at *4 (6th Cir. July 15, 1999) (unpublished) (relying upon *Wong Sun v. United States*, 371 U.S. 471 (1963) and holding that, "[w]hen [the defendant] used force against the officer [in an attempt to flee], even assuming the original stop did not justify a search under *Terry*, the officers had probable cause to arrest him for this new and independent offense. Pursuant to this lawful arrest, the officers were authorized to search [the defendant], and the evidence seized as a result of the search is admissible"); *cf. United States v. Grajeda*, 497 F.3d 879, 881-82 (8th Cir. 2007) ("Where the initial search is invalid, the fruit of that unlawful search must be suppressed unless the evidence resulted from an intervening independent act of free will[.]") (internal citations and quotation marks omitted).

I agree with the well-reasoned principles articulated in these cases and find them applicable to the present case. Further supporting their rationale is that Tennessee law makes it a crime "to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer . . . from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another." Tenn. Code. Ann. § 39-16-602 (a). The definition of "[f]orce . . . shall be broadly construed to accomplish the purposes of this title[,]" Tenn. Code Ann. § 39-11-106(a)(12), and except for specific reasons, none of which are applicable here, "it is no defense to prosecution under this

---

[3]Unpublished opinions of this court are not precedentially binding under the doctrine of stare decisis but may be considered for their persuasive value. *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007).

section that the stop, frisk, halt, arrest or search was unlawful." Tenn. Code Ann. § 39-16-602(b). The Tennessee courts have held that "movements such as 'twisting, turning, pulling away,' and 'flailing one's arms' while police officers are attempting to place a defendant in custody is sufficient force to sustain a conviction" under § 39-16-602(a). *State v. Powell*, No. M2004-03034-CCA-R3-CD, 2005 WL 1950221, at *3 (Tenn. Crim. App. Aug. 15, 2005) (unpublished) (affirming conviction under § 39-16-602(a) where the defendant "pulled one of his arms away as he was being handcuffed") (internal quotation marks omitted); *see also State v. Boyd*, No. M2004-00580-CCA-R3-CD, 2005 WL 885091, at *3 (Tenn. Crim. App. Apr. 15, 2005) (unpublished) (collecting cases). Thus, assuming arguendo that Officer Lewis unlawfully searched or seized Moore when he instructed Moore to put his hands on the hood of the police car and touched his shoulder and side, Moore's conduct in turning, pulling, and attempting to run away from Officer Lewis constituted probable cause to arrest Moore for committing the independent crime of resisting and obstructing an officer under Tennessee Code Annotated § 39-16-602(a). Moore's subsequent arrest and search incident to that arrest were then lawful, and the crack cocaine obtained pursuant to them should not have been suppressed.[4] *Robinson*, 414 U.S. at 234.

---

[4]Although the majority "acknowledge[s] that Defendant's attempt to flee after the search began may have implications for the probable cause analysis," it declines to consider them.

The government raised the issue in its *response* to Moore's motion to suppress, in which it argued that "[t]he defendant's sudden flight then translated the affair from one of reasonable suspicion under *Terry* to one of probable cause to make an arrest. Therefore, the search of defendant Gary Moore's person after his seizure was justified." In his R&R, the magistrate judge addressed the three arguments made by Moore in support of his motion to suppress, none of which asserted that his attempt to escape was irrelevant to the probable cause determination. The magistrate judge denied Moore's suppression motion on the alternative grounds that the police had either reasonable suspicion that Moore was armed to justify a pat down or probable cause to believe he possessed

VII.

For these reasons, the district court erred in granting Moore's motion to suppress, and

I would reverse that judgment. I therefore respectfully dissent.

---

contraband to warrant an arrest and search. In so ruling, the magistrate judge did not address the issue of Moore's flight, although he had done so in his first R&R in which he held that "Defendant's sudden flight on foot translated the affair from one of reasonable suspicion under *Terry* to one of probable cause to make an arrest, and the search of defendant's person after his seizure was justified."

The majority and the district court would apparently impart upon the government an unfair obligation to object not only to a favorable ruling, but also to a ruling that was never made because the movant chose not to raise the issue again after having already received an adverse ruling in a prior R&R from the same magistrate judge. Significantly, Moore did not make any arguments about his flight in his own objections to the operative R&R. The district court's order sustaining Moore's objections, declining to adopt the R&R, and granting the motion to suppress did not address or provide any indication that it had considered his flight as relevant. Therefore, it was wholly proper for the government to remind the court in its motion for reconsideration, as it had argued previously and to which the magistrate judge had agreed, that Moore's flight was crucial to the probable cause inquiry. Under our precedent, the government did not waive the issue. *Cf. Souter v. Jones*, 395 F.3d 577, 586 (6th Cir. 2005) ("[W]e have held that a party, who substantially prevails in a magistrate judge's recommendation, does not waive the right to appeal secondary issues resolved against him by failing to object to the recommendation.").

Moreover, although the government did not cite to Tennessee Revised Code Annotated § 39-16-602(a) in its appellate brief, it argued that, "at the time defendant's person was searched and the crack cocaine was seized from his pocket, the following circumstances established probable cause that defendant possessed illegal drugs: . . . When ordered to place his hands on the cruiser and spread his legs, thereby suggesting that a frisk or search was imminent, defendant fled[,]" and "[t]he search of defendant's person was therefore lawful as a search incident to arrest." The government also emphasized in its brief that "no *actual* violation of the Fourth Amendment precipitated defendant's flight[,]" and "the [district] court refused to even consider defendant's flight as a factor in its probable-cause assessment because of its erroneous finding about its temporal relationship to a potential search by Lewis." (Second emphasis added.) At oral argument, the government argued vigorously that Moore's flight allowed law enforcement to arrest and search him. Therefore, the government did not forfeit the issue in this appeal.